# Liverpool & London & Globe Insurance Co. v. Tillis.

### Action on Insurance Policy.

1. *Pleadings; effect of joining issue on replications.*—Where the defendant takes issue on the replication to a plea, he can not afterwards object to the sufficiency of such replication, although it may have been defective and subject to demurrer; the joinder of issue thereon amounting to a waiver of these defects.

2. *Same; same.*—Where the same replications are filed to several pleas by which the plaintiff admits the truth of the facts averred in the pleas and their sufficiency as a defense to the action, the defendant, by joining issue on such replications, admits that if plaintiff sustains either one of them by proof, he is entitled to recover, so far as the pleas replied to are relied upon as a defense; and this is true, notwithstanding the replication may have been defective and subject to demurrer.

3. *Action on insurance policy; sufficiency of evidence to support replications.*—Where, to an action on an insurance policy, the defendant pleads as a defense thereto, a breach of the "Iron Safe Clause" of the policy, by which the assured covenanted to keep in an iron safe, or in some safe place not exposed to fire, a set of books showing purchases and sales of merchandise, last inventories, &c , and to which pleas the plaintiff replied "that assured kept a set of books as required, but they were destroyed by fire, hence· could not be produced," upon which replication the defendant joined issue,

[Liverpool & London & Globe Insurance Co. v. Tillis.]

such replication, though insufficient if it had been demurred to, is supported, and the plaintiff is entitled to recover thereunder, by testimony of one of defendant's witnesses, that the insured told him the books were burned in the building, if such statement was never controverted, and the testimony, though objectionable, was never objected to.

4. *Same; same.*—Where, in such an action to the special plea averring the breach by the assured of the "Iron Safe Clause" in the policy, the plaintiff replied "that defendant waived any right it may have had to the production of the books by its refusal through its agent, and through its adjuster to pay the full amount expressed in the policy, and by its denial of any liability thereunder," upon which replication the defendant joined issue, admitting the insufficiency of the facts averred therein as a complete answer to the plea, there is evidence tending to support such replication, when there was evidence introduced tending to show that the agent of the defendant and its adjuster did not pay the full amount of the policy, and that the person acting as adjuster for the defendant denied the liability of the company upon the policy.

5. *Insurance company; authority of special adjuster.*—Where, after a fire, an insurance company sends a person to the scene of the fire and authorizes him to act as adjuster in the particular case, with all the authority in reference thereto that is given to general adjusters, the insured, in dealing with such person, in the absence of notice to the contrary, has the right to presume he has authority to act for and bind the company as to all matters within the scope of his duties as the adjuster of the particular case, and such special adjuster, by denying all liability of the company under the policy, may waive the provision in the policy, requiring the assured to produce formal proofs of loss, as effectually as could the general adjuster of the company.

6. *Evidence; insufficient objection, and when made too late.*—Where after a question has been asked and answered, and the answer is responsive to the question, there is a single objection to the question and answer, upon the ground "that it was illegal," such objection comes too late and is insufficient, and is properly overruled, notwithstanding the fact the answer may have been open to the objection that it was secondary evidence.

APPEAL from the Circuit Court of Geneva.

Tried before the Hon. JOHN R. TYSON.

This was an action brought by the appellee, R. Tillis, against the appellant, the Liverpool & London & Globe Insurance Company, and counted upon an insurance policy, issued by the defendant.

The complaint declares upon a policy of insurance issued by defendant to Chancey & Newsome, on Septem-

[Liverpool & London & Globe Insurance Co. v. Tillis.]

ber 28, 1892, on a stock of goods, alleged to have been burned October 6, thereafter. The complaint avers a transfer of the policy to plaintiff.

To this complaint various pleas were filed. They set up substantially the following defenses : 1st. The general issue. 2d. That the policy required a proof of loss to be made by the assured before any action could be maintained thereon, and none had been made. 3d. The policy required assured to furnish a certificate of the nearest justice or notary public, certifying to certain specified facts, and that no such certificate had been furnished. 4th. That the policy required the assured as soon after giving notice of loss as possible, to render the company a particular account of the loss, signed and sworn to by them, and no such account had been furnished. 5th. The 5th plea sets up substantially the same defense as the 3d. 6th. That the assured covenanted in the policy to keep a set of books showing sales and purchases and other transactions, and further, to keep them at night and when the store should not be actually open in an iron safe, or in some safe place, not exposed to a fire that would destroy the store. That the assured further agreed to produce such books, and in the event of a failure to produce them the policy should be void. It further averred that this clause of the policy was a condition precedent to a recovery, and that it had not been complied with. 7th. That the assured had moved the goods from the storehouse before the fire, and had then set fire to and burned the storehouse.

To these pleas, the plaintiff filed a number of replications. The replications to the 2, 3, 4 and 5 pleas, were substantially as follows : 1st. That before the expiration of the time for making proof of loss and for furnishing a certificate of a magistrate, defendant positively declined and refused to pay the damages claimed, and thereby waived compliance with those conditions. 2d. That before the time for making proof and furnishing the certificate, the defendant through its agent, Morris, as well as through its adjuster, denied all liability on the policy, but Morris, at the same time gave plaintiff a draft drawn by him as agent of the defendant on the defendant for five hundred and fifty dollars in full payment and satisfaction of any liability it had incurred, thereby asserting that it was only liable for that amount. 3d.

That although the policy was for eleven hundred dollars, the property destroyed was of a value greatly in excess of that sum, the defendant, within the time allowed by the policy for making proofs of loss and for furnishing the certificate, gave plaintiff a draft for five hundred and fifty dollars drawn by Morris, its agent, on itself, in settlement of damages sustained on the policy. That at the time of giving the draft, Morris, defendant's agent, stated that if defendant refused to pay the draft, it would pay nothing on the policy. 4th. That within the sixty days allowed for making proofs of loss, and for furnishing the certificate, the adjuster of the defendant visited the premises and inspected the same, made inquiry of the loss sustained, and made no complaint of the failure to furnish proof of loss and to do other acts mentioned in the pleas. The replications to the 6th plea were substantially as follows: 1st. That assured kept a set of books as required, but they were destroyed by fire, hence, could not be produced. 2d. That defendant waived any right it may have had to the production of the books by its refusal, through its agent and through its adjuster, to pay the full amount expressed in the policy, and by its denial of any liability thereunder. 3d. That at the time of issuing the policy, defendant knew that the assured did not and had not kept an iron safe, and thereby waived the keeping of the same. To the 7th plea, the record does not show that any replications were filed, or that the plaintiff even took issue thereon.

The record shows a demurrer to one replication, and a motion to strike one plea, but it does not show any action by the court thereon. The judgment entry recites that issue was joined on the plaintiff's replications to defendant's pleas.

On the trial of the case, the policy itself was introduced in evidence. It contained the clause requiring the assured to keep and produce books as averred in the pleas. The 10th clause required the proof of loss, and a magistrate's certificate to be furnished, and provided that the loss should not be payable until they should be furnished. The only testimony so far as material to any issue involved on this appeal, was substantially as follows: Chancey testified, that he notified Morris, agent of defendant, of the loss, and Morris stated that he would notify the company, but said that it would want

to see the books assured kept, and he, witness, replied that they were all burned except a small book showing cash account after September 28, 1892. Morris then said he expected they would have some trouble, and advised him to employ a lawyer, and recommended his, Morris's, partner. A few days afterwards, he called on Morris, who stated, that he had written the company, but had heard nothing. He then traded the policy to Tillis, the plaintiff. About November 1, Prioleau, defendant's adjuster, visited the scene of the fire, made inquiry touching the circumstances of the burning, and the amount of the loss, and made no objection because of the failure to furnish proofs of loss, or because of the failure to comply with any other condition. The plaintiff testified, that about the month of November, 1892, he went to Morris's office to see Prioleau, and asked him what he was going to do about the insurance money; that Morris and Foster were present; that Prioleau told him the company was not liable, and he had no proposition to make to him; and that subsequently Morris gave him a draft on the company for five hundred and fifty dollars, and stated that if it was not paid, the company would not pay anything. This draft was not paid.

Prioleau was introduced as a witness for the defendant. He denied making or attempting to make any adjustment of the loss. He also denied telling Tillis the company was not liable; he said that he told him he had no authority to receive propositions or settle claims. The record shows that, on cross-examination, this witness was permitted to testify that he had written a letter to the company, in which he stated that he did not think it was liable under the iron-safe clause, and that as no proofs had been made, he could not state the amount of loss. The defendant objected to the question and answer, regarding what this witness wrote to the company, on the ground that it was "illegal." The court overruled the objection, and defendant excepted. This witness further testified that his instructions were to investigate the circumstances of the loss, ascertain the amount, and to report whether, in his opinion, the company was liable. That he had neither the original nor a copy of his report. Foster corroborated Prioleau as to what occurred with Tillis in Morris's office, as did also Morris. Morris testified that he told Chancey that the

company would wish to see their books, and was told that they were all burned in the building, but he denied telling him that the company was not liable. He testified that Chancey asked him to help him get his money, and he told him he could not. He then asked him about a lawyer, and in reply to this inquiry, he suggested that he employ Foster. He testified that he was only a soliciting agent, and had no authority except to issue policies, transfer risks, and to collect premiums. On cross-examination, he testified that at the time he drew the draft, he told Tillis that he had no authority to draw it; that Tillis held a claim against assured and other claims were held by Foster, the aggregate amount of which claims was five hundred and fifty dollars; that the draft was drawn to pay all of them; that subsequently Tillis' attorney refused to allow the money to be paid to Foster, and the latter wired and wrote the company not to pay the draft. He denied telling Tillis that if the draft was not paid, nothing would be paid. Defendant introduced the application for insurance made by the assured, in which the applicants agreed to keep their inventories and books in a fire-proof safe, or take them out of the building every night. At the conclusion of this testimony, defendant moved to exclude all testimony of denial of liability by Prioleau and Morris, on the ground that they were not such agents as could bind defendant by such denial. This motion was overruled, and defendant excepted. There was a good deal of evidence tending to show that the assured had moved the goods from the store before the fire, and a good deal in rebuttal, but no question is presented on this appeal arising upon that evidence, and it is deemed unnecessary to set it out.

Upon the introduction of all the evidence, the court at the request of the plaintiff gave the following written charges to the jury: (1.) "If the adjuster of defendant visited the scene of the fire, investigated the circumstances attending it, and this was in November following the fire in October, and made no objection to the failure of plaintiff, or plaintiff's assignors, to furnish the proof of loss, then it is the duty of the jury to ascertain from all the evidence whether the preliminary proofs of loss were thereby waived." (2.) "If the jury believe from the evidence that the plaintiff has reasonably satisfied you of the truth of his replications, your verdict will

be for the plaintiff, unless they further believe that either Chancey or Newsome burned the house, or removed the goods before the fire." The defendant separately excepted to the giving of each of these charges, and also separately excepted to the court's refusal to give each of the following charges requested by it: (1.) " If the jury believe the evidence, they will find for the defendant." (2.) " Although Mr. Prioleau, special adjuster of the defendant, visited the place of the fire, and said nothing about proofs of loss, this would not be a waiver of said proof." (5.) " If the jury believe from the evidence that Mr. Prioleau was the special adjuster for defendant for the purpose of adjusting or ascertaining the amount of this loss only, and not the general adjuster of said defendant, then any admissions or denials made by him regarding said loss, or the liability of said defendant concerning same, would not bind the defendant, nor be a waiver of defendant's rights to demand the proof of loss." (6.) " The person soliciting insurance is not the agent of the company, but the agent of the person assured, hence any admissions or denials of the liability of the defendant, by said soliciting agent, will not bind the company, nor waive its right to demand proof of loss." (7.) " A soliciting agent with authority to sign policies, and transfer risks of insurance, is without any authority to bind defendant, or the insurance company regarding loss by fire." (8.) " To constitute a waiver of the conditions of a policy, there must be necessarily a matter of mutual intention between the contracting parties in the nature of a new contract between them." (12.) " If the plaintiffs had already vitiated their policy under the ' iron safe clause,' when they failed to keep their books as required under said policy, then the plaintiff cannot recover, although the jury may believe the company, through its representative, afterwards denied the liability of the company."

There was judgment for the plaintiff, assessing his damages at $957. The defendant appeals, and assigns as error the several rulings of the court upon the evidence, the giving of the charges requested by the plaintiff, and the refusal to give the several charges requested by the defendant.

TOMPKINS & TROY, for appellant.—Each of the repli-

cations is made up of a number of separate facts conjunctively alleged, and, of course, the failure to prove any of these facts is fatal to the replication. Its sufficiency is dependent upon each one of the facts alleged therein. When defendant took issue upon the replication, he admitted that if all the facts alleged therein were proved, they would be, conjunctively, a good reply to his plea, not that a portion of them would be so; if, he is held down to the technical rule, that, if he takes issue on an insufficient replication, he can not complain, they being proved, if a verdict is rendered against him thereon, the other side must be held up to the technical rule requiring him to prove all the facts alleged, or else lose his case.—*Dockery v. Day*, 7 Port. 518; *McRae v. McDonald*, 57 Ala. 423; 1 Chitty on Pleading, star page 622; 1 Greenl. on Evidence, § 51; *City Council v. Hughes*, 65 Ala. 201; *Wood v. Budden*, Hobart, 264; Stephen on Pleading, star p. 289.

No principle of law is more fully settled, than that there can be no recovery, on policies of insurance like the one here sued on, until the assured has furnished the insurer with the proof of loss and magistrate's certificate required by the policy; and by no court has this rule been more strictly adhered to, than by the Supreme Court of Alabama; and the evidence shows without contradiction, that neither was furnished here.—*Fire Ins. Co. v. Felrath*, 77 Ala. 199; *Cen. City Ins. Co. v. Oates*, 86 Ala. 558; *Johnson v. Phoenix Ins. Co.*, 112 Mass. 49. It is true, that the furnishing of this proof and certificate may be waived, but when it is claimed to have been waived by the act of an agent, it must be shown to be the act of an agent who had authority to bind the principal in the particular subject matter. Every one dealing with an agent is bound at his peril to ascertain his power, and the principal is only bound when the agent acts within the scope of that power.—1 Brick. Dig. 55, § 35; 3 Brick. Dig. 22, § 54; 1 Amer. & Eng. Encyc. of Law, 351. And testimony of the declaration or acts of one alleged to be an agent, should not be admitted against the principal, until his authority to bind the principal is shown.—1 Amer. & Eng. Encyc. of Law, 341–2, notes.

When one is proved to be a general agent of another, there is an implied authority on his part, to bind the

principal in all matters concerning the business about which he is employed; but no such implication can arise until the fact of such general agency is proved. In the case at bar, the testimony is uncontradicted that both Prioleau and Morris were special agents, with special and limited authority, and that neither one of them was authorized to waive either proof of loss or the magistrate's certificate. Besides it is settled law, that agents of the class to which they belonged, have no implied power to waive a compliance with those conditions.—*Queen Ins. Co. v. Young*, 86 Ala. 424; *Phoenix Ins. Co. v. Copeland*, 86. Ala. 551; s. c. 90 Ala. 386; *Merseran v. Phoenix Ins. Co.*, 66 N. Y. 274; *Lohn's v. Ins. Co.*, 121 Mass. 439. Upon the undisputed evidence in this case, then, it is clear, under the principles of law as recognized by this court and all other courts of character and reputation, the plaintiff below was not entitled to recover against the appellant. The only evidence bearing upon the authority of Morris and Prioleau was their own; that was uncontradicted, and showed they had no authority to bind the company by either an admission or denial of liability.

M. E. MILLIGAN, *contra.*—Whether or not the replication of appellee to the pleas of appellant presented a good defense thereto is immaterial, since litigants may, if they choose, try their cases on false issues.—3 Brick. Dig. 706, §§ 89, 90; *Jones v. Hagler*, 95 Ala. 529. The second, third and fourth pleas of defendant set up, in varying form, the failure of the insured to comply with the stipulations of the policy respecting proofs of loss. Appellee replied to those pleas, and the bill of exceptions shows that there was some evidence tending to support the allegations of every averment contained in the replications. The same is true with respect to plea No. 6, and the replication thereto. If the pleadings had stopped just here, I can not but see that with the issues thereby presented, appellee would have been entitled to the general charge. As each replication purported to answer the averments of all the pleas, if but one was sustained by evidence, appellee was entitled to verdict.

There was no error in the court's allowing evidence of the declarations of the witnesses who were agents of the

14

defendant, denying the defendant's liability upon the policy sued on.—*Com. Fire Ins. Co. v. Allen*, 80 Ala. 571; *Cap. City Ins. Co. v. Caldwell*, 95 Ala. 77; *Phoenix Ins. Co. v. R. B. H.*, 59 N. W. Rep. 752; *Fritz v. Lebanon Mut. Ins. Co.*, 26 Atl. Rep. 7; *Cushing v. Ins. Co.*, 30 Pac. Rep. 736; *Hahu v. Guardian Ins. Co.*, 32 Pac. Rep. 683; *East Texas Fire Ins. Co. v. Brown*, 18 S. W. Rep. 713; *Roe v. Dwelling House Ins. Co.*, 23 Atl. Rep. 718; *Ins. Co. v. Daugherty*, 102 Pa. St. 568.

COLEMAN, J.—The appellee, Tillis, sued upon a fire policy of insurance to recover for the loss sustained, by the burning of a storehouse and a stock of merchandise. The total insurance was for eleven hundred dollars, nine hundred of which was placed upon the merchandise, and two hundred, upon the building. The defendant pleaded in defense several pleas, each of which averred a breach of some covenant of the assured contained in the policy.

The sixth plea averred a breach of what is denominated the "Iron Safe Clause" of the policy, by which the assured covenanted to keep a set of books, showing purchases and sales of merchandise and last inventories, &c. We do not feel authorized by the pleadings to determine whether or not a breach of this covenant could be legally pleaded to an action for the recovery of the value of the building.—*State Insurance Co. v. Schreck*, 27 Neb. 527; s. c. 20 Amer. St. Rep. 696, note; *Loomis v. Rockford Ins. Co.*, 77 Wis. 87; s. c. 20 Amer. St. Rep. 96, and note; *Phoenix Ins. Co. v. Lawrence*, 4 Metcalf (Ky.) 9, 14.

The judgment entry recites, that issue was joined on the plaintiff's replication to the defendant's pleas. Parties have a right to frame their own pleadings, and however defective the replication, this court can only consider the rulings of the trial court upon the issues presented by the pleadings. The same replications were filed to pleas number two, three, four and five. By his replications, the plaintiff admitted the truth of the facts averred in the pleas, and their sufficiency as a defense to the action. By joining issue upon the plaintiff's replications, the defendant admitted, that if plaintiff sustained either one of them by proof, that plaintiff was entitled to recover, so far as the pleas replied to

were relied upon as a defense. Controlled by these principles of pleading, it is not necessary to examine each replication and the evidence offered in support of the replications. From an examination of the fourth replication to pleas 2, 3, 4 and 5, and a comparison of the facts averred in said replication, with the evidence of the witness Chancey, it is apparent that plaintiff introduced evidence, to which there was no objection, which, if believed, sustained this replication. The language of this witness as stated in the bill of exceptions, is almost identical with that used in the replication.

The appellant contends that there was no evidence to support the plaintiff's replications to plea number 6, which averred a breach of the "Iron Safe Clause," and that the defendant was entitled to the affirmative charge on this plea. The first replication to this plea averred that the books were burned in the fire. The defendant's witness Morris, on his direct examination, testified that the insured "told him that the books were burned in the building." The statement was never controverted. The testimony may have been objectionable, but it was not objected to. It was introduced by the defendant for some purpose. Its tendency was to show a destruction of the books, and the breach of the iron safe clause. The replication may have been wholly insufficient, but issue was joined upon the replication. The plaintiff had offered evidence of a similar statement, without objection. We can not sanction a practice, which would permit a party voluntarily to put facts or statements before a jury, calculated to influence their minds, and then assert its illegality or incompetency. We are also of opinion that there was evidence tending to support the second replication to the sixth plea. This replication may also have been defective in many respects, as an answer to the plea, but the defendant took issue upon the averment of facts. There was evidence tending to show, that Morris was an agent of the defendant, and that Prioleau was its adjuster, and that they did not pay the full amount of the policy. We do not understand the replication as averring that Morris and Prioleau were authorized to pay the policy in full, and the replication may have been demurrable in not averring authority. The case of *Phoenix Insurance Co v. Copeland*, 86 Ala. 551, 556, does not sustain appellant's ar-

gument. Replication numbered 2 in that case averred that Jackson, defendant's agent, "informed him that the policy was all right and that the loss would be paid, and that Jackson had authority to make such representation, and to bind the defendant by said representation." The replication was held good on demurrer. It required the averment of authority on the part of Jackson to make it good against demurrer. If the replication had omitted the averment of authority, and without objection the defendant had joined issue upon the averment that Jackson "had informed him that the policy was all right and would be paid," upon proof of the averment, the plaintiff would have been entitled to recover. The joinder in issue admitted the sufficiency of the facts as they were averred in the replication, to be a complete answer to the plea. The further averment in the second replication, in the case at bar, to-wit, "and by its denial of any and all liability, under said policy," devolved upon the plaintiff to show a denial of liability by the defendant. The replication in this respect does not undertake to set out the facts of the denial or by whom the denial was made. It was incumbent on plaintiff under this averment to show a denial of some one authorized to bind the company. There is evidence tending to show that Prioleau the adjuster, acting as such, denied the liability of the company upon the policy, and the question is whether the company was bound by his action in the matter of the denial of any and all liability. "The adjustment of a loss," says Bouvier, "is the settling and ascertaining the amount of the indemnity which the insured, after making all proper allowances, is entitled to receive; * * * or it is the amount of the loss as settled between the parties to a policy of insurance." 1 Bouv., § 1222.

We think the argument entitled to little weight which attempts to distinguished between the authority of Prioleau, who was appointed and authorized to act as adjuster in the present case, and the authority of the general adjuster of the company. He testified that his duties in the particular case were the same as that of any other adjuster. The insured dealing with him as such, in the absence of notice to the contrary, had the right to presume he was authorized to act and to bind the company as to all matters within the scope of his

duties as the adjuster of the particular case. He was present where the fire occurred. He was there to adjust the loss after notice given to the company of the fire. As adjuster he had the authority to waive the production of the books, or the formal proof of loss. If after investigating the circumstances of the burning and the amount of loss sustained he denied, to the insured, the liability of the company upon the policy, it was as much a denial by the company of liability as to the particular case, as if it had been made by the general adjuster of the company. He testified he was directed by the company to report whether in his opinion the company was liable, and he reported in writing, that in his opinion the company was not liable. Although his opinion, as such, was not evidence to bind the company to his conclusion, the evidence tends to show the scope of his duties, and authority.—*Capital City Ins. Co. v. Caldwell*, 95 Ala. 77; *Fire Ins. Co. v. Felrath*, 77 Ala. 194; *Queen Ins. Co. v. Young*, 86 Ala. 424; *Aetna Ins. Co. v. Shryer*, 85 Ind. 362; *Butterworth v. Assur. Company*, 132 Mass. 489; May on Insurance, § 505.

We are satisfied the evidence tended to support the replications to the sixth plea of the defendant.

The bill of exceptions fails to put the court in error, in overruling the defendant's objection to the question and answer of the witness Prioleau. There is but one objection, and that was to the question and answer. It is evident that the objection was not raised until after the witness had answered. If the answer was responsive to the question, and for aught that appears it was, the objection came too late. The ground of objection stated was, that "it was illegal," and was directed against the entire answer. The witness testified, "that he wrote to the company telling them that he did not think it liable under the iron safe clause, and that proof of loss had not been made." The entire evidence was not illegal. It may have been secondary and subject to the objection that the letter was better evidence, and its absence should be accounted for before receiving evidence of its contents.

What has been said heretofore in reference to the testimony of the witness Prioleau, is sufficient to show that the court did not err in overruling the motion to exclude the evidence of the witnesses Morris and Prioleau. The

motion was single and applied to the evidence of both witnesses.

An adjuster may waive proof of loss. We find no error in the charges given by the court at the request of the plaintiff. The defendant was not entitled to the general affirmative charge. By joining issue on plaintiff's replication, the defendant waived his right to insist upon the legal propositions involved in charges numbered two, six, seven, eight and twelve, conceding them to be correct abstractly, and the court did not err in refusing them. Charge number five asserts a proposition at variance with the law, and was properly refused.

There is no error in the record available to appellant, and the judgment of the court is affirmed.